Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 516-9861
mikemillen@aol.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORTNEY BLYTHE,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF BERKELEY,<br><br>　　　　Defendants. | NO.:  C07-03173 MMC<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 10, 2007<br>Time: 9:00 a.m.<br>Room: 7, 19th Floor<br>Judge:  Chesney |

　　　　Plaintiff  KORTNEY BLYTHE hereby submits these POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.

**FACTS**

　　　　Plaintiff KORTNEY BLYTHE is a natural person.  Motivated by her moral, religious, and political beliefs, plaintiff has regularly engaged in pro-life, anti-abortion speech activities.  These speech activities include hand-to-hand leafleting, education about abortion, and holding signs with a pro-life, anti-abortion message.  All of these activities occur on public sidewalks or other public fora where she can convey her message to the public.  Blythe Decl. ¶2.

　　　　On or about October 6, 2006, plaintiff was at the U.C. Berkeley campus (the "campus") in the City of Berkeley.  While at the campus she stationed herself in an outdoor area freely and openly accessible to the public and engaged in peaceful, non-disruptive free speech activity for a period of time. Blythe Decl. ¶3.  She was then approached by police officers who demanded that she leave

the premises. Blythe Decl. ¶4. Plaintiff refused and she was then given a criminal citation accusing her of violating Berkeley Municipal Code §13.52.020 (the "Ordinance"). Blythe Decl. ¶5. The Ordinance reads as follows:

> It is unlawful for any person to enter or go upon or pass over or remain upon any land of another after being personally forbidden to do so by the owner of said property, or by the person entitled to the possession thereof for the time being, or the authorized agent of either. (Ord. 2829-NS § 2, 1947)

Request for Judicial Notice ¶1. The City of Berkeley deems violation of the Ordinance as a misdemeanor. Request for Judicial Notice ¶1. Plaintiff was further told that if she did not leave she would be physically arrested and her signs confiscated. Blythe Decl. ¶5. Plaintiff then left and was unable to engage in her free speech activity at that location. Blythe Decl. ¶6.

As a result of this criminal citation, plaintiff had to engage counsel to defend her in court against the charges. Plaintiff was successful in having the charges dismissed and suffered no conviction due to the charges. Blythe Decl. ¶7.

Plaintiff would like to return to the U.C. Berkeley campus to engage in free speech activity but does not want to be arrested again. At this point plaintiff unwilling to do so until a court rules that Berkeley Municipal Code §13.52.020 is an invalid, unenforceable ordinance. Blythe Decl. ¶8.

## ARGUMENT

### I. BERKELEY MUNICIPAL CODE §13.52.020 GIVES UNCHECKED POWER TO LANDOWNERS TO EXCLUDE PERSONS FOR ANY REASON WHATSOEVER

As noted above, Berkeley Municipal Code §13.52.020 reads as follows:

> It is unlawful for any person to enter or go upon or pass over or remain upon any land of another after being personally forbidden to do so by the owner of said property, or by the person entitled to the possession thereof for the time being, or the authorized agent of either. (Ord. 2829-NS § 2, 1947)

This language grants a landowner broad authority to eject someone on their premises, regardless of whether those premises are private, quasi-public, or public. The language of the ordinance does not specifically state its intended application to any particular type of premises, situation, or conduct, and this vagueness alone creates the potential for overbreadth in its

enforcement.. In fact, the proscribed conduct is not actually defined, and the "trespasser" is not given fair warning of what conduct, if any, may result in her being asked to leave the premises. Thus, the ordinance would allow a Safeway store manager to demand that long-haired men leave the store or else face prosecution. It would allow a government institution to demand that all Democrats or Republicans leave the premises. It would allow a movie theater manager to demand that anyone who discussed Islam leave the building under penalty of criminal prosecution.

II. CALIFORNIA COURTS ROUTINELY STRIKE DOWN TRESPASS STATUTES WHICH GIVE UNLIMITED EJECTMENT POWER TO LANDLORDS

Under California Civil Code §52.1, the court has authority to enter an injunction to prevent the violation of a plaintiff's rights under the statutes and constitutions of California and the United States. Here, the ordinance in question violates plaintiff's rights under California's Unruh Act.

This case is not a matter of first impression. In the case of *In re Cox* 3 Cal.3d 205 (1970), the California Supreme Court was confronted with a San Rafael trespass ordinance which stated in part: "No person shall remain upon any private property or business premises, after being notified by the owner or lessee or other person in charge thereof to remove therefrom." *Id.* at 210, fn.2.

The court noted that the ordinance, if it contained no exceptions, would run afoul of the both the Unruh Civil rights Act (Civil Code §51 et seq.) and 42 U.S.C. §1983. The Unruh Act was implicated because it forbids any arbitrary discrimination by a business enterprise, *Cox*, 3 Cal.3d at 212, and §1983 was implicated because it forbids *any* invidious discrimination. *Cox*, 3 Cal.3d at 216, fn 10.

The *Cox* court determined that the San Rafael ordinance was not void on its face for vagueness or overbreadth only because (a) the ordinance did not grant the shopping center absolute power to arbitrarily exclude would-be customers from its premises by virtue of the ordinance's Unruh Civil Rights Act exception (*id*. at 211-212), and (b) it expressly prohibited ejectment due to "peaceful expressions of political or religious opinions" (*id*. at 221.) Further, the statute listed a

host of specific types of disputes in which the statute would not apply because of the existence of civil remedies. (I*d.* at 211, fn. 2.)

By contrast, Berkeley's Ordinance lists no exceptions whatsoever. Thus, the very evils the *Cox* court noted but dismissed because of the exception list are present here in full force.

The case of *Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971) yielded a similar result. There, the City of Hermosa Beach enacted Municipal Code §20-10 which prohibited sitting, standing, or otherwise using any open space serving commercial or private property in violation of the expressed wish of the owner or legal tenant. *Id.* at 149, fn. 1. The court found the ordinance unconstitutional, noting as follows:

> Section 20-10 purports to give the owner of private property the arbitrary power to exclude anyone at his whim, under penalty of criminal prosecution. Such an ordinance is clearly an interference with the civil rights guaranteed by Civil Code sections 51 and 52. The ordinance is unconstitutional under the principles set forth in *In re Bell* (1942) 19 Cal.2d 488 [122 P.2d 22]; *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992]; and *Diamond v. Bland* (1970) 3 Cal.3d 653 [91 Cal.Rptr. 501, 477 P.2d 733]. The ordinance contains none of the exceptions which saved the ordinance considered in the *Cox* case. It is impossible to save the ordinance in this case by reading into it, by construction, the many exceptions which would be necessary to avoid conflict with the Civil Code and the Constitution. In its present form it is so overbroad that it stands as a serious threat to the exercise of civil and constitutional rights.

Again, Berkeley's Ordinance contains none of the necessary *Cox* exceptions. Note that a similar San Jose ordinance, discussed in *In Re Timothy R.*, 202 Cal.App.3d 593 (1988), did contain the necessary *Cox* exceptions but was still struck down due to the imperfection of the exceptions.

The court is asked to find that Berkeley's ordinance is unconstitutional under California law.

III.  THE BERKELEY ORDINANCE VIOLATES 42 U.S.C. §1983

The Ordinance violates 42 U.S.C. §1983, which prohibits state actors from depriving any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

The City of Berkeley is obviously a state actor, leaving only the question as to whether the Ordinance violates constitutional law. Given that the Ordinance violates both equal protection and due process, the answer is affirmative.

As noted in *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003), the Supreme Court "has developed a tripartite structure for evaluating equal protection challenges to legislation." The first is where the statute in question substantially burdens "fundamental rights", such as the right to vote. In those cases strict scrutiny applies and the statute will be upheld only if the state can show that the statute is narrowly drawn to serve a compelling state interest. (*Id.*) In addition, all statutes are subject to the least exacting scrutiny, rational basis review, and will be upheld only if they are rationally related to a legitimate governmental purpose. (*Id.*)

Here, the Ordinance fails both these tests. As noted in the facts, the City of Berkeley applies the Ordinance to persons engaging in free speech activities even when they station themselves on property freely open to and accessible by the public at large. Given that the Ordinance contains none of the exceptions mandated by *Cox* and its progeny, the City's broad application is not surprising. Because the Ordinance resulted in plaintiff being forced to stop her free speech activity, it can safely be said that the Ordinance "substantially burdens fundamental rights." Given that the *Cox, Ames,* and *Timothy R.* cases all teach that this sort of ordinance can be easily made constitutional simply by adding some basic exceptions, the court should find that the statute is not narrowly drawn. Further, the subject matter of the Ordinance, namely real property ownership privileges, while perhaps a legitimate state interest, is not "compelling" in any sense of the word. Accordingly, the court should find that the statute violated the equal protection clause.

In addition, the Ordinance violates due process because it is both vague and overbroad. It is vague because it is not clear as to where it will be applied nor is it clear as to the conduct that authorizes a landowner to eject someone. This runs afoul of the due process requirement that a criminal statute be "definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." *Kolendar v. Lawson* (1983) 461 U.S. 352, 357. Similarly, the Ordinance is overbroad in that it not only allows a landowner to eject someone from a private place (such as the kitchen of a private home) but also a public place (such as the free speech area on the campus of U.C. Berkeley).

This Ordinance creates the very situation which so greatly concerned the U.S. Supreme Court in *Papachristou v. City Of Jacksonville*, 405 U.S. 156, 165 (1972):

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.

This Ordinance is particularly troubling because it leaves the decision to declare an act criminal not in the hands of a government official but an unelected, unappointed, unaccountable landlord who is fully authorized to arbitrarily and whimsically exclude anyone he or she so desires for any reason or none at all. Such an ordinance violates due process.

## IV. PLAINTIFF MEETS THE LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, plaintiff must demonstrate either "(1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in [her] favor." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). In addition, the "advancement of the public interest" is one of the "traditional equitable criteria for granting preliminary injunctive relief" considered by the Ninth Circuit. *Mayweathers v. Newland*, 258 F.3d 930, 938 (9th Cir. 2001).

There can be no doubt that plaintiff's peaceful leafleting and advocacy of issues lies at the core of First Amendment values. *See Connick v. Myers*, 461 U.S. 138, 145 (1983) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection") (quotation marks and citations omitted). The ability to freely communicate with others in public is a public interest of the highest order.

In addition, the fact that plaintiff has raised "serious First Amendment questions compels a finding that there exists 'the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [plaintiff's] favor.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d

959, 973 (9th Cir. 2002) (quoting *Viacom Int'l, Inc. v. FCC*, 828 F.Supp. 741, 744 (N.D. Cal. 1993)).

Given that Berkeley's ordinance is repugnant to both California and Federal law as explained above, plaintiff has shown the necessary prerequisites to the granting of a preliminary injunction.

V. THE COURT SHOULD WAIVE BOND

If the court enters a preliminary injunction, the court is asked to waive bond under F.R.Civ.P. Rule 65(c) as this Circuit has signaled its approval of nominal bond or waiver of bond requirements where a sole plaintiff seeks to enforce rights in matters of public interest. See, e.g., *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (approving $1,000 bond and noting with approval a 2nd circuit decision which waived bond). Plaintiffs are seeking to enforce core First Amendment rights which most certainly are matter of public interest and which inure to the benefit of the entire public.

In addition, the City of Berkeley will incur no additional expenses if it stops enforcing the Ordinance. By definition, when a City ceases to enforce a criminal ordinance it saves the cost of the police and prosecutorial resources involved. Given that there is no economic risk to the City by being enjoined, the Court is asked to waive bond as allowed by *Barahona-Gomez*. *See also Behymer-Smith v. Coral Acad. of Sci.*, 427 F. Supp. 2d 969, 974 (2006) (district court orders nominal $100 bond in First Amendment case because evidence shows that defendant will suffer little, if any damage, by issuance of injunction).

## CONCLUSION

Berkeley's Ordinance violates basic state and federal constitutional and statutory guarantees. The court is asked to enter a preliminary injunction barring its enforcement.

Dated: June 26, 2007

MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFFS