1  MANUELA ALBUQUERQUE, City Attorney    SBN 67464
   MATTHEW J. OREBIC, Deputy City Attorney    SBN 124491
2  Morebic@ci.berkeley.ca.us
   2180 Milvia Street, Fourth Floor
3  Berkeley, CA 94704
   TEL.:  (510) 981-6950
4  FAX.:  (510) 981-6960

5  Attorneys for Defendant CITY OF BERKELEY

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO

11

12  **KORTNEY BLYTHE,**                   NO.  C 07-03173 MMC

13           Plaintiff,             **DEFENDANT CITY OF BERKELEY'S**
                                    **OPPOSITION TO PLAINTIFF'S**
14  v.                              **MOTION FOR PRELIMINARY**
                                    **INJUNCTION**
15  **CITY OF BERKELEY,**
                                    **DATE:  September 14, 2007**
16           Defendant.            **TIME:   9:00 a.m.**
                                    **CTRM:  7**
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.  PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE
    RELIEF AGAINST THE CITY ................................................................ 3

II. PLAINTIFF HAS FAILED TO MEET THE STANDARD
    FOR A PRELIMINARY INJUNCTION.................................................... 5

    A.  Plaintiff Is Unlikely To Succeed On The Merits Because
        The Federal Cases Routinely Reject Constitutional Challenges
        To Trespass Laws ...................................................................... 5

    B.  The Public's Interest Disfavors Granting A Preliminary
        Injunction Here ......................................................................... 10

    C.  The State Cases Reviewing Constitutional Challenges To
        Trespass Laws Do Not Indicate Likely Success On The Merits .............. 10

III. THE CITY'S TRESPASS ORDINANCE SHOULD NOT
     BE ENJOINED BECAUSE IT CAN BE SUBJECT TO A
     LIMITING CONSTRUCTION, IF NECESSARY............................... 15

CONCLUSION..................................................................................................... 16

i

# TABLE OF AUTHORITIES

## Federal Cases

*Adderley v. Florida,* 385 U.S. 39 (1966) .............................................................. 1, 8, 9, 14, 15, 16

*Bouie v. Columbia*, 378 U.S. 347 (1964) ................................................................ 1, 8, 9, 15, 16

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ....................................................................... 6

*Buritica v. United States*, 8 F.Supp.2d 1188 (N.D. Cal. 1998) ............................................ 4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................ 3, 4

*Daniel v. City of Tampa*, 843 F. Supp. 1445 (D. Fla. 1993) ................................................. 9

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) ........................................... 3

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993) ............... 5, 10

*Kolender v. Lawson*, 461 U.S. 352 (1983) ........................................................... 7-8, 10, 15

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................... 3

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ................................................ 13

*Rizzo v. Goode*, 423 U.S. 362 (1976) ................................................................................. 3

*Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir. 1996) ...................................................... 6, 7

*Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965) ........................................................ 12, 14, 15

*Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998) ............................................... 3

*Village of Hoffman Estates et al. v. The Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ................................................................................................ 8, 15

*Virginia v. Hicks,* 539 U.S. 113 (2003) ............................................................. 1, 6-7, 9, 14, 15, 16

## State Cases

*Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971) ...................................... 10, 13, 14, 15

*In re Cox*, 3 Cal.3d 205 (1970) ........................................................... 1, 10, 11, 12, 13, 15

*In re Timothy R.*, 202 Cal.App.3d 593 (1988) ........................................... 1, 10-11, 14-15

Other Authorities

California Penal Code section 415 ................................................................................................. 12

California Penal Code section 602 ................................................................................................. 10

California Penal Code section 647 ................................................................................................. 12

Berkeley Municipal Code ("BMC") section 13.52.020 ........................................ 2, 4, 5, 7, 15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

# INTRODUCTION

Defendant City of Berkeley ("City") opposes plaintiff's motion for a preliminary injunction seeking to strike down the City's trespass ordinance for four reasons.

- Plaintiff lacks standing to seek such extraordinary relief against the City;
- Plaintiff is not likely to succeed on the merits;
- The balance of hardships tips in favor of the public; and
- The narrowing construction the City gives the trespass ordinance avoids the constitutional issues posed.

With respect to standing, plaintiff's motion fails for two reasons.  First, plaintiff fails to mention that a University of California ("UC") police officer issued her the trespassing citation on the UC campus, and no *City* officer was involved in the incident.  As the City caused no injury, plaintiff lacks standing to sue the City.  Second, plaintiff fails to show an immediate threat of irreparable harm if an injunction does not issue.  Plaintiff states she is afraid to return to the UC Berkeley campus to demonstrate for fear of being cited for trespass by UCPD officers.  However, it is undisputed that City officers do not patrol the UC Berkeley campus, and that City officers only apply the trespass ordinance to *private* property.  Therefore, the City poses no immediate threat of irreparable harm to plaintiff.

Plaintiff is not likely to succeed on the merits of her claim that the City's trespass ordinance must contain an express exception for First Amendment activity in order to be consti-tutional.  Several United States Supreme Court cases have rejected overbreadth and vagueness challenges to general trespass laws that contained no such exception.  *Virginia v. Hicks,* 539 U.S. 113, 119 n. 2 (2003); *Adderley v. Florida,* 385 U.S. 39, 41-42 (1966); and *Bouie v. Columbia*, 378 U.S. 347, 349 (1964).  The state court cases plaintiff cites involving trespass ordinances (*In re Cox*, 3 Cal.3d 205 (1970) and *In re Timothy R.*, 202 Cal.App.3d 593 (1988)) do not change this result.

A preliminary injunction should also be denied because the balance of hardships here tips in favor of the general public.  If the City's trespass ordinance is enjoined, the ability to remove garden-variety trespassers from private property will be impaired.

1

1    Finally, if necessary, the Court is required to narrowly construe the City's trespass

2    ordinance in accordance with the City's own interpretation that the ordinance only applies to

3    private property.  This construction avoids plaintiff's constitutional challenge.  For all these

4    reasons, plaintiff should pursue a more focused remedy with UC rather than seek sweeping and

5    unnecessary equitable relief against the City that will adversely affect the entire town.

6                                    **STATEMENT OF FACTS**

7    Plaintiff states that on October 6, 2006, she was engaged in free speech activity in a

8    peaceful manner in Sproul Plaza, an open and outdoor area of the UC Campus.  Blythe Decl. ¶ 3.

9    Plaintiff asserts "police officers" asked her to leave the campus, and when she refused, she was

10   issued a citation for a violation of Berkeley Municipal Code (BMC) section 13.52.020.  *Id.* at ¶¶

11   4-5.  Plaintiff claims she would "like to return to the U.C. Berkeley campus to engage in free

12   speech activity but I do not want to be arrested again."  *Id.* at ¶ 8.

13   A UC Police Department (UCPD) police report dated October 6, 2006 states UCPD

14   Officer H. Williams issued plaintiff a citation for BMC section 13.52.020 and released her at the

15   scene.  UCPD Decl. Ex. A.  UCPD Officer Williams' report states that plaintiff "was in *violation*

16   regarding *Sproul Plaza free speech rules* and requirements established by the UC Regents."  *Id.*

17   (Emphasis added).  The UCPD report documents plaintiff was told she "could demonstrate

18   without *violation* of the *campus rules* on the city sidewalk south of the barrier poles leading into

19   Sproul Plaza."  *Id.*  (Emphasis added).

20   City of Berkeley police officers do not perform patrols of the UC campus and only apply

21   BMC section 13.52.020 to *private* property.  Gustafson Decl. ¶¶ 3, 4, 5, and 9.  The City's tres-

22   pass ordinance can be charged as an infraction or a misdemeanor (unlike the state's trespass

23   laws, which are a misdemeanor).  Orebic Decl. Ex. A.  The option to charge a minor crime as an

24   infraction simplifies and makes prosecution more efficient because infractions do not require the

25   involvement of the Alameda County District Attorney, whose office has been reluctant to use

26   prosecutorial resources on minor misdemeanor crimes.  Gustafson Decl. ¶¶ 6-8.

27

28

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

**ARGUMENT**

I.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF AGAINST THE CITY

Plaintiff's motion seeks to enjoin the City, not UC, from enforcing the City's local trespass ordinance on a citywide basis.  A federal court enjoining municipal law enforcement officers in advance of their actions is highly disfavored due to two core principles of our system of government – federalism and the separation of powers doctrine.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042-43 (9th Cir. 1999).  "The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." *Id.* at 1042 (citations omitted); *see e.g., Rizzo v. Goode*, 423 U.S. 362, 380-81 (1976) (principles of equity militate heavily against granting an injunction against a police department).  Rather, the federal courts grant the government the "widest latitude" in conducting its own internal affairs.  *Rizzo, supra* at 378-79.

The case and controversy requirement of Article III standing in federal court requires a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 104 (1998) citing *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Further, standing for injunctive relief against municipal law enforcement is heightened beyond the baseline standing requirements because "even if the complaint presented an existing case or controversy, an adequate basis for equitable relief" must also include "… the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (denying injunctive relief to prohibit police choke-holds).  Thus, for injunctive relief, plaintiff must show that the City poses a threat of irreparable injury that is both "real and immediate" and not "conjectural or hypothetical." *Id. at* 102.  A plaintiff's subjective apprehensions supported

1  by a showing of past harm, but absent further evidence that such harm will be repeated, is

2  insufficient to fulfill standing requirements to obtain an injunction.  *See id.* at 107.[1]

3      Here, plaintiff does not allege even a *single* instance of the City enforcing BMC

4  13.52.020 in an improper manner.  Plaintiff also does not assert the City poses a "real and imme-

5  diate" threat of violating her rights in the future.  Plaintiff merely states that she would like to

6  return to the UC campus to demonstrate.  However, it is undisputed that the City does not patrol

7  the UC campus, and the City does not utilize BMC 13.52.020 for incidents occurring on public

8  property.  Therefore, plaintiff lacks standing to seek injunctive relief against the City because the

9  City neither caused her alleged injury, nor poses a threat of future harm.

10      Even with respect to UCPD, the record does not support a finding that a UC police

11  officer would enforce BMC 13.52.020 in similar circumstances in the future.  On the contrary,

12  the UCPD officer's comments at the end of his police report appear to acknowledge he later

13  learned that plaintiff's group was *not* subject to campus rules governing student protests.  UCPD

14  Sgt. Tucker Decl. Ex. A (police report).  This indicates the UC officer may have misapplied

15  UC's *campus rules* for student protests to plaintiff (a non-student) in this single instance.  Plain-

16  tiff does not provide any information regarding the dismissal of her trespass citation, whether she

17  contacted the UCPD subsequent to the dismissal to inquire about whether they would attempt to

18  cite her in the future, or what other steps, if any, she has taken to determine whether her alleged

19  fear of repeated citation is reasonably warranted.  The past citation by one UCPD officer, who,

20  based on the narrative of his report on the citation, may have misapplied UC campus rules

21  intended only for students to plaintiff (a non-student) is not sufficient evidence to establish plain-

22  tiff would be cited again in the future.  Rather, the evidence suggests plaintiff's citation was

23  probably an anomaly, and there is no evidence that UCPD (much less the City) has used BMC

24  13.52.020 to infringe on the rights of others.

---

26  [1] This Court has reiterated that to have standing to seek injunctive relief against a city regarding
27  police practices, "a plaintiff must show (1) a pervasive pattern of past misconduct; (2) a causal
linkage between the pattern and a policy of the named defendants; (3) the likelihood of imme-
28  diate and irreparable harm; and (4) the inadequacy or unavailability of remedies at law."  *Buri-
tica v. United States*, 8 F.Supp.2d 1188, 1192 (N.D. Cal. 1998), citing *Lyons*, 461 U.S. at 111.

1    In summary, plaintiff does not assert the City misapplied the trespass ordinance and

2  weakly suggests the ordinance *might* be applied to her in a future interaction with the UC police

3  on Sproul Plaza on the UC campus.  This is insufficient to establish standing to seek injunctive

4  relief against the City that would prohibit its use of the ordinance on a citywide basis that

5  includes private property.  Therefore, this Court should deny plaintiff's request for a drastic and

6  sweeping remedy of injunctive relief sought against the City for lack of standing alone.[2]

7
8  II.    PLAINTIFF HAS FAILED TO MEET THE STANDARD FOR A PRELIMINARY
       INJUNCTION

9    Beyond standing, a motion for preliminary injunction requires that plaintiff establish: (1)

10  plaintiff will suffer irreparable injury if the relief is denied, (2) probable success on the merits,

11  (3) the balance of potential harm favors plaintiff, and, if applicable, (4) the public interest favors

12  granting relief.  *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.

13  1993).  The Ninth Circuit has also adopted an "alternative standard" under which plaintiff can

14  demonstrate either: (1) a combination of probable success on the merits and the possibility of

15  irreparable injury if relief is not granted; or (2) the existence of serious questions going to the

16  merits and that the balance of hardships tips sharply in its favor.  *Id.*  Plaintiff satisfies neither

17  test here because she is not likely to succeed on the merits and the public would be harmed if the

18  preliminary injunction plaintiff seeks is granted.

19    A.    Plaintiff Is Unlikely To Succeed On The Merits Because The Federal Cases
           Routinely Reject Constitutional Challenges To Trespass Laws
20

21  Berkeley Municipal Code ("BMC") section 13.52.020 provides:

22    It is unlawful for any person to enter or go upon or pass over or remain upon any
       land of another after being personally forbidden to do so by the owner of said
23    property, or by the person entitled to the possession thereof for the time being, or
       the authorized agent of either.
24

25  Plaintiff argues BMC 13.52.020 is unconstitutional on overbreadth and vagueness grounds.

26

27  _____

28  [2]  If plaintiff seeks assurance that the UC police will not enforce the City's trespass ordinance in
    Sproul Plaza in the future, plaintiff should seek injunctive relief against UC as to its campus
    rules for Sproul Plaza, not the City.

5

1    Overbreadth is a narrowly circumscribed doctrine restricted in application to laws

2    *directly* implicating First Amendment rights.  *Roulette v. City of Seattle*, 97 F.3d 300, 303-05

3    (9th Cir. 1996) ("the Supreme Court has entertained facial challenges only against statutes that,

4    'by their terms,' sought to regulate 'spoken words,' or patently 'expressive or communicative

5    conduct' such as picketing or handbilling," citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13

6    (1973).  "Rarely, *if ever*, will an overbreadth challenge succeed against a law or regulation that is

7    not specifically addressed to speech or to conduct necessarily associated with speech (such as

8    picketing or demonstrating)."  *Virginia v. Hicks,* 539 U.S. 113, 124 (2003) (emphasis added).

9    Additionally, for an overbreadth challenge, the plaintiff must show the "law punishes a

10    'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legiti-

11    mate sweep,'" and even then, the statute should not be enjoined if "'a limiting construction or

12    partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally

13    protected expression.'"  *Hicks*, 539 U.S. at 118-19, quoting *Broadrick,* 413 U.S. at 615. "The fact

14    that [a legislative act] might operate unconstitutionally under some conceivable set of

15    circumstances is insufficient to render it wholly invalid."  *Roulette*, 97 F.3d at 306.

16    In *Hicks,* the Supreme Court rejected an overbreadth challenge to a public housing

17    authority's administrative trespass policy enforcing the state of Virginia's general trespass law.

18    Virginia's trespass law provided:

19

20    If any person without authority of law goes upon or remains upon the lands, buildings or
      premises of another, or any portion or area thereof, after having been forbidden to do so,
21    either orally or in writing, by the owner, lessee, custodian or other person lawfully in
      charge thereof . . . he shall be guilty of a Class 1 misdemeanor.

22

23    *Hicks*, 539 U.S. at 116-17.   The United States Supreme Court agreed with the Virginia Supreme

24    Court's characterization of this law as an "unquestionably valid trespass statute."  *Hicks*, 539

25    U.S. at 119 n. 2.  The Court in *Hicks* reviewed an overbreadth challenge to a public housing

26    authority's administrative policy that used the state trespass law to exclude any person who

27    "cannot demonstrate a legitimate business or social purpose for being on the" housing authority's

28    premises.  *Id.* at 116.  The Court rejected the overbreadth challenge because the trespass policy

1    did not prohibit "a 'substantial' amount of protected speech in relation to its many legitimate

2    applications." *Id*. 123-24.

3          In coming to this conclusion, the Court in *Hicks* flatly stated that trespass prohibitions

4    have nothing "to do with the First Amendment." *Id.* at 123. Rather, the Court instructed that if a

5    trespass policy or law is used to violate a person's First Amendment rights, the correct remedy is

6    to sue for the "as applied" incident, and courts should not use the "strong medicine" of

7    overbreadth to strike down a "trespass policy." *Id*. at 124.

8          Here, like the trespass policy reviewed in *Hicks*, BMC 13.52.020 neither regulates speech

9    "or conduct closely related to speech. Further, BMC 13.52.020 does not have a substantial

10    application to protected expressive conduct in relation to its plainly legitimate sweep. Plaintiff's

11    tortured examples as to how the trespass ordinance "might operate under some conceivable set of

12    circumstances is insufficient to render it wholly invalid."[3] *Roulette, supra.* Neither the text of

13    the City's ordinance, nor the record before this Court as to how it is applied, suggest the

14    ordinance "substantially" impairs protected speech in relation to its plainly legitimate sweep. In

15    fact, aside from plaintiff's personal citation, there is no evidence the ordinance has ever been

16    applied in an inappropriate manner to anyone, or that the ordinance has created any chilling

17    effect on any other person's speech. For the above reasons, plaintiff's overbreadth challenge to

18    the ordinance is not likely to prevail on the merits.

19          Plaintiff's other constitutional challenge to BMC 13.52.020 is vagueness. The void for

20    vagueness "doctrine requires that a penal statute define the criminal offense with sufficient

21    definiteness that ordinary people can understand what conduct is prohibited and in a manner that

22    does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S.

23    352, 357 (1983). In *Kolender* (borrowing from overbreadth doctrine), the Supreme Court

24    determined that a facial challenge to a law on vagueness grounds is only appropriately permitted

25    

26    [3] Plaintiff argues there is a danger that "a Safeway store manager" could "demand that long-

27    haired men leave the store," that "a government institution" might "demand that all Democrats or
     Republicans leave the premises," or that "a movie theater manager" would be allowed "to

28    demand that anyone who discussed Islam leave the building."

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

"if a law reaches 'a substantial amount of constitutionally protected conduct.'"  461 U.S. at 358, n.8, quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).

Just as with overbreadth, the Supreme Court has squarely rejected vagueness challenges to general trespass laws.  In *Adderley v. Florida,* 385 U.S. 39, 41-42 (1966), the Supreme Court rejected a void for vagueness challenge to the state of Florida's trespass law, which provided:

> Every trespass upon the property of another, committed with a malicious and mischievous intent, the punishment of which is not specially provided for, shall be punished by imprisonment not exceeding three months, or by fine not exceeding one hundred dollars.

Similar to the instant case, the petitioner in *Adderley* was arrested while protesting on government-owned grounds.  The Court flatly rejected the void for vagueness challenge.  *Id.* at 42.  The Court explained that a trespass statute "is aimed at conduct of one limited kind, that is, for one person or persons to trespass upon the property of another with a malicious and mischievous intent.  There is no lack of notice in this law, nothing to entrap or fool the unwary."  *Id.*  The Court acknowledged a trespass law can potentially be abused to violate the constitutional right to demonstrate lawfully, but the Court then observed this "abstract proposition gets us nowhere in deciding" whether the statute at issue is void for vagueness.  *Id.* at 43.  Rather, such an argument merely gives rise to an "as applied" claim for damages.

In *Bouie v. Columbia*, 378 U.S. 347, 349 (1964), the Court evaluated the application of South Carolina's trespassing law to civil rights lunch counter demonstrators.  South Carolina's trespassing law provided in pertinent part:

> Every entry upon the lands … of another, *after* notice from the owner or tenant prohibiting such entry, shall be a misdemeanor … .

(Emphasis added.)  The Court upheld an "as applied" challenge brought by the demonstrators because they did not enter the lunch counter area *after* notice to leave was given, but rather, entered *before* notice was given.  Therefore, the demonstrators were not trespassing under the terms of the state statute.  However, in the context of discussing the void for vagueness doctrine, the Court characterized the South Carolina trespass law as "admirably narrow and precise" and not void for vagueness because it and gave fair warning to violators.  *Bouie*, 378 U.S. at 351.

1    In *Daniel v. City of Tampa*, 843 F. Supp. 1445, 1446 (D. Fla. 1993), the court considered

2  demonstrator's overbreadth and vagueness challenges to Florida's trespass law, which provided

3  in pertinent part:

4

5    Whoever, without being authorized, licensed, or invited, willfully enters upon or remains
     in any property other than a structure or conveyance as to which notice against entering
     or remaining is given, either by actual communication to the offender or by posting,
6    fencing, or cultivation as described in § 810.011, commits the offense of  trespass on
     property other than a structure or conveyance.

7

8  The court noted:  "To succumb to an overbreadth challenge, this kind of statute must be substan-

9  tially overbroad; it must reach a substantial amount of constitutionally protected conduct."  *Id.* at

10  1448.  Therefore, like in *Hicks*, the court rejected the overbreadth challenge and held that

11  "[w]hen 'judged in relation to [its] plainly legitimate sweep,' [citation omitted], this statute quite

12  clearly does very little to impinge upon First Amendment rights."  *Id*.

13    With respect to the vagueness challenge, the court in *Daniel* held Florida's trespass law

14  "is not void for vagueness because, when measured by common understanding and practice of

15  the English language, the statute quite clearly forbids one to trespass upon the subject property."

16  *Id.*  In fact, the court stated "Florida's trespass *after warning* statute easily meets these require-

17  ments."  *Id.*  (Emphasis added).

18    Berkeley's trespass ordinance also contains the "after warning" element noted in *Daniel*,

19  and it is substantially similar to the "after warning" trespass laws reviewed in *Adderley* and

20  *Bouie*.  These three federal cases all reject void for vagueness challenges (all brought by demon-

21  strators asserting First Amendment rights) to trespass laws that are substantially similar to

22  Berkeley's trespass law.  Like the trespass laws in *Adderley, Bouie*, and *Daniel*, the City's

23  trespass ordinance provides sufficient notice to the ordinary person; it simply and clearly states

24  that a person must not "enter or go upon or pass over or remain upon" a property after being

25  personally forbidden to do so by the owner or lawful occupant.  This language is definite enough

26  that an ordinary person would understand the conduct prohibited by the ordinance.  The

27  ordinance likewise constrains the discretion of law enforcement officers by virtue of the fact that

28  it is complaint-driven, and not likely to be initiated by a police officer independent of a property

9

1  owner first initiating a complaint.  Finally, the City's ordinance cannot be said to prohibit a

2  "substantial amount of constitutionally protected conduct" in relation to its plainly legitimate

3  sweep.  *Kolender*, 461 U.S. at 358, n.8.  For these reasons, plaintiff's vagueness challenge to

4  BMC 13.52.020 is not likely to succeed on the merits.[4]

5       B.     The Public's Interest Disfavors Granting A Preliminary Injunction Here

6       As stated above, to obtain a preliminary injunction enjoining the enforcement of a law,

7  plaintiff must also demonstrate the public at large will not be adversely affected.  *See, Inter-*

8  *national Jensen*, 4 F.3d at 822.  Here, enjoining the City's trespass ordinance will adversely

9  affect its residents and disturb the status quo because the law could no longer be enforced in

10  garden-variety trespass matters on private property.  This may leave those complaining of

11  trespass on private property without a remedy.[5]   For this additional reason, the preliminary

12  injunction requested by plaintiff should be denied.

13       C.     The State Cases Reviewing Constitutional Challenges To Trespass Laws Do Not
               Indicate Likely Success On The Merits

14

15       Plaintiff argues BMC section 13.52.020 is unconstitutional under *In re Cox*, 3 Cal.3d 205

16  (1970), *Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971), and *In re Timothy R.*, 202

17  Cal.App.3d 593 (1988) because it does not contain express exceptions for protected conduct such

18  as free speech activities.  *Cox* and *Timothy R.* do not support plaintiff's argument, and *Ames*

19  incorrectly reads *Cox* to require such an exception, when it does not do so.  *Ames* is also

20

_____

21  [4]  The fact that a property owner may attempt to exclude a person from his or her premises in
22  violation of their rights by improperly invoking BMC 13.52.020 does not make the ordinance
     vague.  Rather, an individual cited in such circumstances should avail his or herself of remedies
     against the property owner for such improper exclusion.  BMC 13.52.020 does not give
23  landowners a license to arbitrarily exclude individuals at a whim because the ordinance cannot
     reasonably be interpreted to disregard constitutional and statutory law that necessarily informs its
24  scope; it is appropriately read as operating within the structure of state and federal protections of
     individual rights, as nothing in the language of the ordinance conflicts with state or federal
25  constitutional or statutory mandates.
26

27  [5]  While a state trespass law (Penal Code section 602) could be utilized for most private prop-
     erties, an important advantage of the local ordinance is that it can be charged as an infraction
28  rather than a misdemeanor, which in turn makes it more useful and likely to be enforced.  Orebic
     Decl. Ex. A and Gustafson Decl. ¶¶ 6-8.

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

1   effectively overruled by the above-discussed United States Supreme Court cases upholding

2   trespass ordinances that do not expressly contain a First Amendment exception.

3        In *Cox*, a youth on a motorcycle pulled up inside the privately owned Northgate

4   Shopping Center in San Rafael to talk with a person with long hair and unconventional dress.  3

5   Cal.3d at 210.  The security guard asked the youth (hereafter "petitioner") and the other person to

6   leave the shopping center, and had them arrested for trespass after they refused to leave.  *Id.*  The

7   City of San Rafael's trespass ordinance provided:

8

9         No person shall remain upon any private property or business premises, after being
          notified by the owner or lessee or other person in charge thereof to remove therefrom.

10

11  *Id.* at 210.  The ordinance also contained a number of exceptions, including circumstances where

12  application of the ordinance would result in "an act prohibited by the Unruh Civil Rights Act" or

13  "an interference with … constitutionally protected right of freedom of speech such as (but not

14  limited to) peaceful expressions of political or religious opinions, not involving *offensive*

15  *personal conduct*."  *Id.*  (Emphasis added).

16       In *Cox,* the shopping center claimed it has the "absolute power" to exclude the arrested

17  youth (and implicitly argued the Unruh Act did not apply to the petitioner because he was not a

18  member of a protected class).  *Id.* at 211.  The Court disagreed.  The Court held that under the

19  Unruh Civil Rights Act, "a business generally open to the public may not arbitrarily exclude a

20  would-be customer from its premises" under San Rafael's trespass ordinance, regardless of

21  whether the customer is in an expressly protected class.  *Id.* at 216.

22       The petitioner, on the other hand, argued the trespass ordinance was unconstitutional

23  because it expressly allowed enforcement to stop "offensive personal conduct," which the

24  petitioner argued violated the First Amendment (because much of such conduct is protected

25  speech).  *Id. at 221.*  Again, the Court disagreed.  Instead, the Court employed a narrow interpre-

26  tation to the phrase "offensive personal conduct" by limiting its application only to criminal

27  conduct such as obstructing the sidewalk (Penal Code section 647c) or disturbing the peace

28  (Penal Code section 415) when done in settings such as the "streets, sidewalks, and other public

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

areas" of the shopping center (*Id.* at 223), but not in other settings such as inside a restaurant where "more stringent standards of decorum" are appropriate (*Id.* at 217 n. 13).[6]

Here, plaintiff asserts without citation to any page or line that the Court in *Cox* "noted" that if a trespass ordinance contains no exceptions, it runs afoul of both the Unruh Act and 42 U.S.C. section 1983. Plt's Brf at 3:17-18.[7]  Quite to the contrary, the Court in *Cox* nowhere held or asserted that San Rafael's trespass ordinance would be unconstitutional if not for the listed exceptions for the Unruh Act and free speech activities.  To uphold the ordinance, the Court in *Cox* merely applied a narrowing construction to the errant phrase "offensive personal conduct" by relying on *Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965).  *Cox*, 3 Cal.3d at 222-23.   In fact, the Court in *Cox* pointed out that in *Shuttlesworth,* the Supreme Court gave a very broad vagrancy ordinance that contained *no* exceptions "an explicitly narrow construction, which saved its constitutionality … [and] did not hold the ordinance void."[8]  *Id*.  Thus, the *Cox* case does not support plaintiff's argument that a trespass ordinance is void if it does not contain an exception for expressive speech.  Although the Court in *Cox* found the exceptions in the ordinance permissible (after narrowing the phrase "offensive personal conduct"), the Court nowhere stated that the exceptions were required for the ordinance to be constitutional.  If this were the law, then virtually every local ordinance regulating personal conduct, e.g. no blocking pedestrian passage on sidewalks, would be unconstitutional for failure to mention every conceivable exception for protected conduct.

---

[6]  The petitioner also argued the trespass ordinance was unconstitutionally applied to him under the circumstances of the case, but the Court declined to rule on that claim due to the lack of an adequate factual record.  *Id.* at 223-24.

[7]   Plaintiff also incorrectly asserts the *Cox* court upheld the ordinance "only because" the list of exceptions it contained.  Plt's Brf. at 3:22.  The pages cited by plaintiff (3 Cal.3d at 211-12 and 221) do not support plaintiff's interpretation of the case.

[8]  The Birmingham ordinance in *Shuttlesworth* prohibited "any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on."  *Cox*, 3 Cal.3d at 222.  The Supreme Court "saved" the ordinance with a narrowing construction that added the element of "blocking free passage" of other persons.  *Id.* at 223.

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC

1    Plaintiff also relies on *Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971).  In

2   *Ames,* the court struck down a loitering law, which are heavily disfavored in American

3   jurisprudence.[9]  The City of Hermosa Beach's ordinance stated:

> No person shall linger, loiter, sit, stand, or otherwise use for business or social purposes
> … any commercial … property in violation of the expressed wish of the owner, legal
> tenant, or manager of such commercial … premises.

7   The Hermosa Beach ordinance prohibits ambiguously defined conduct upon the property

8   ("linger, loiter, sit, stand, or otherwise use for business or social purposes"), whereas BMC

9   13.52.020 clearly prohibits a person entering or remaining on a property after being personally

10   forbidden to do so by the owner or lawful occupant.  Therefore, the vagueness of the meaning of

11   loitering is not at issue in the Berkeley trespass ordinance.

12    Plaintiff nonetheless seizes on the statement in *Ames* that the Hermosa Beach ordinance

13   "contains none of the exceptions which saved the [San Rafael] ordinance in the *Cox* case."  16

14   Cal.App.3d at 152.  However, as stated above, the Court in *Cox* did *not* hold or otherwise state

15   the San Rafael trespass ordinance was "saved" by or even needed the exceptions it contained.

16   On the contrary, the Court in *Cox* merely narrowed the application of the phrase "offensive

17   personal conduct" to save the San Rafael ordinance, and even then, only narrowed that particular

18   phrase when applying it to the "streets, sidewalks, and other public areas" in a shopping center.

19   3 Cal.3d at 223.  At the same time, the Court in *Cox*, suggested that such a broad category

20   (offensive personal conduct) for enforcement of the San Rafael trespass ordinance may well be

21   an appropriate basis for exclusion from certain premises open to the public, e.g., inside

22   restaurants or stores, for which "more stringent standards of decorum than those called for in

23   public areas" of a shopping center are appropriate.  3 Cal.3d at 217 n. 13 and 223.  Thus, the

24   rationale used in *Ames*, that exceptions to a trespass ordinance are needed to "save" it, is not a

25   correct statement of the holding or rationale in *Cox*.  Further, to the extent *Ames* relies on this

26   rationale for striking down Hermosa Beach's ordinance, *Ames* is directly contrary to long

27

28

---

[9]  *See e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972).

13

1   standing United States Supreme Court jurisprudence rejecting challenges to trespass laws.

2   *Hicks, supra* (trespass ordinance with no exceptions)*; Adderley, supra* (trespass ordinance with

3   no exceptions)*, Bouie, supra* (trespass ordinance with no exceptions); *see also*, *Shuttlesworth,*

4   *supra* (using a narrowing construction for a public loitering ordinance that contained no

5   exceptions).  Therefore, the rationale in *Ames* should not be applied here.

6        Finally, plaintiff cites to *In re Timothy R.*, 202 Cal.App.3d 593 (1988).  There, the court

7   struck down part of a trespass ordinance pertaining to private property posted with "no trespass-

8   ing" signs because (like the problem addressed in *Cox*) one of the exceptions to this provision

9   was vague.  Plt's Brf. at 4:18.  In *Timothy R.*, the City of San Jose's trespassing ordinance

10  provided in pertinent part:

11
12      C.  No person, without the express written permission of the owner or lessee, or
         other person in charge of business, commercial premises, or other private
13         property, shall enter or remain upon such business, commercial premises or
         other private property if said premises or property [is] conspicuously posted
14         with signs forbidding trespass….

15      D.  The provisions of this section shall not apply in any of the following
         circumstances:

16
                                    * * *
17
        5. When such person is upon another's private property or business premises
18         under claim or color of legal right."

19
20  202 Cal.App.3d at 596.  A shopping center in San Jose posted "no trespassing" signs referred to

21  in Section C of the ordinance.  *Id.* at 595.  Subsequently, a police officer arrested a youth in the

22  shopping center for an ostensible violation of Section C of the ordinance.  *Id.*  Section C was

23  found "by itself, constitutionally clear."  *Id.* at 598.  However, the court found Section D(5)

24  modified Section C for persons entering premises posted "under claim or color of legal right,"

25  and taken together, this made Section C overly vague.  *Id.* at 600-01.  On this reasoning, the

26  court struck down both Section C and D(5) of the ordinance, because it was impossible to tell

27  which persons had permission to enter a shopping center posted with "no trespassing" signs

28  under "claim or color of legal right."  *Id.* at 601.

---

14

Of note, the court in *Timothy R.* stated Sections A and B of the ordinance were sound,[10] and cited with approval to *Adderley, supra* and *Bouie, supra*, which both rejected challenges to general trespass laws that contained no exceptions.   The court stated Sections A and B are distinguished from Section C because Sections A and B are "invoked by a request to leave the premises by the person in charge" which arguably gives fair warning to what is being prohibited. *Id.* at 597.   However, neither Section A nor B was at issue in *Timothy R.*, and therefore, the court gave no consideration as to whether Sections A and B could stand alone or were required to also contain an exception for protected speech, which exception was listed elsewhere in Section D. 202 Cal.App.3d at 596, 597, and 598 n. 2.  Therefore, *Timothy R.* is of little import here.

In summary, *Cox* and *Timothy R.* do not support a finding that plaintiff is likely to suc-ceed on the merits of her constitutional challenge to BMC 13.52.020, and *Ames* does not change this result because it is not correctly reasoned and is contrary to *Hicks, Adderley,* and *Bouie.*

III.   THE CITY'S TRESPASS ORDINANCE SHOULD NOT BE ENJOINED BECAUSE IT CAN BE SUBJECT TO A LIMITING CONSTRUCTION, IF NECESSARY

With respect to an overbreadth challenge, *if* the challenge has merit, the court is obligated to first attempt to give the law "a limiting construction or partial invalidation [that] so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Hicks,* 539 U.S. at 118-19.  A statute should be interpreted narrowly to avoid overbreadth. *Shuttles-worth, supra.*  "A federal court must, of course, consider any limiting construction that a[n] . . . enforcement agency has proffered." *Kolender v. Lawson*, 461 U.S. 352, 356 (1983) quoting *Village of Hoffman Estates, et al. v. The Flipside, Hoffman Estates, Inc. (Hoffman)*, 455 U.S. 489, 495 n.5 (1982) (emphasis added).  Therefore, facial challenges can be disposed of by

---

[10]  Sections A and B provided:

> A.  No person shall remain upon any private property or business premises after being notified by the owner or lessee, or other person in charge thereof to remove himself therefrom.

> B.  No person shall, without permission, express or implied, of the owner or lessee, or other person in charge of private property or business premises, shall enter upon such private property or business premises after being notified by the owner or lessee, or other person in charge thereof, to keep off or keep away therefrom.

1  demonstrating that improper applications of the ordinance are not likely to occur because of the

2  City's enforcement policy.

3          The United States Supreme Court in *Hicks, Adderley*, and *Bouie*, approved of trespass

4  laws substantially similar to BMC 13.52.020 without resorting to a narrowing construction.

5  Therefore, no limiting construction for BMC 13.52.020 is needed here.  However, if this Court

6  reaches the issue of narrowing construction, the record establishes the City does *not* apply BMC

7  13.52.020 to public property.  Given this limited enforcement policy, there is no basis or need to

8  enjoin the City from enforcing the ordinance on public property (such as UC's Sproul Plaza), and

9  plaintiff's motion should be denied.

                              **CONCLUSION**

10         For the above reasons, plaintiff's motion for a preliminary injunction should be denied.

11

12

13  Dated:  August 24, 2007                    Respectfully submitted:

14
                                             MANUELA ALBUQUERQUE, City Attorney
15                                           MATTHEW J. OREBIC, Deputy City Attorney

16

17                           By:   _____/s/_____
                                          MATTHEW J. OREBIC
18                                 Attorneys for Defendant CITY OF BERKELEY

19

20

21

22

23

24

25

26

27

28

DEF. CITY OF BERKELEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
ACSC NO. C 07 03173 MMC