Michael Millen
Attorney at Law (#151731)
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Telephone: (408) 871-0777
Fax: (408) 516-9861
mikemillen@aol.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORTNEY BLYTHE,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>    Defendants. | NO.: C07-03173 MMC<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: September 14, 2007<br>Time: 9:00 a.m.<br>Room: 7, 19th Floor<br>Judge: Chesney |

Plaintiff KORTNEY BLYTHE hereby submits this REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.

## INTRODUCTION

The City of Berkeley ("City") has an unconstitutional law on its books. Case law is clear that trespass ordinances which give an owner unfettered ability to eject anyone at anytime for any reason are overbroad and cannot withstand judicial scrutiny.

The City's position is that because someone outside of their control used the bad law to arrest plaintiff, plaintiff should take up that matter with the arresting party and leave the law alone. Neither federal nor state jurisprudence countenances such a result.

# ARGUMENT

## I. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF AGAINST HE CITY

The City's first argument is that because the City did not enforce the Ordinance against plaintiff and does not intend to do so, plaintiff cannot assert any claim against the City and thus has no standing. There are several problems with this argument.

First, the City has chosen to pass a law which creates a public offense anywhere in the City, and by definition such a law can be enforced by anyone and not just City personnel. *See*, California Penal Code §835a (any peace officer may arrest someone for commission of a public offense); California Penal Code §837 (any private person may arrest someone for commission of a public offense). The City cannot empower the world at large to arrest people under a bad ordinance and then claim that they are not responsible for the fact that someone used the power granted them by the City.

Second, if the court entered an order declaring the Ordinance unconstitutional, violating it would no longer be a public offense and thus no further arrests could be made. Plaintiff has submitted a sworn statement indicating that she would like to return to a location inside the City and engage in free speech activity but that she is afraid she will again be arrested as before. Once this court nullifies the Ordinance, plaintiff will be able to continue her activities as she has requested without worry that a third-party will arrest her under the now-defunct ordinance. This easily satisfies the "fairly traceable connection" standard between plaintiff's injury of being arrested and the defendant's conduct of enacting the Ordinance.

## II. PLAINTIFF EASILY MEETS THE STANDARDS FOR A PRELIMINARY INJUNCTION

The City argues that plaintiff is not likely to succeed on the merits and that the public would be harmed if the preliminary injunction were granted. Neither point is well taken.

### A. Federal Case Law Does Not Reject This Sort of Challenge

The City misconstrues the nature of plaintiff's challenge to the ordinance, suggesting that plaintiff is simply bringing an overbreadth and vagueness challenge. This neglects the most critical of plaintiff's challenges, namely equal protection and due process.

In *Orloff v. Los Angeles Turf Club* (1951) 36 Cal.2d 734, the California Supreme Court noted that the power to deny persons access to property otherwise open to the public, "being a restraint on a personal right, is circumscribed by the same constitutional safeguards of equal protection and due process as are restraints under penal laws." There is no denying that persons who find themselves in the City of Berkeley have a right, *inter alia*, to be free of discrimination under the Unruh Civil Rights Act (Cal. Civil Code §52 and 42 U.S.C. §1981-1982), to be free of being unjustifiably ejected from a common carrier (Penal Code §365), to engage in peaceful labor-picketing activities (First Amendment), to peacefully express their political or religious opinions not involving offensive personal conduct (First Amendment), and to be free from ejectment if they have a right to be on the real property (common law).

However, the Ordinance gives all landowners, both private and public, the power to arbitrarily strip persons of these rights by simply decreeing that the landowner does not honor these rights and then unceremoniously ejecting the person. None of defendant's case citations deal with such a situation.

*Roulette v. City of Seattle,* 97 F.3d 300, 303-05 (9th Cir. 1996) simply teaches that sitting or lying on a sidewalk carries so little First Amendment expression that a facial First Amendment challenge to a law banning same cannot succeed. The case did not deal with a law that gave landowners the power to abrogate numerous Constitutional, statutory, and common law rights at their personal whim.

In *Virginia v. Hicks*, 539 U.S. 113, 116, 122 (2003), the Supreme Court was presented with a trespass law that allowed ejectment of any person who "cannot demonstrate a legitimate business or social purpose for being on the premises". Given that the *Hicks* plaintiff "failed to demonstrate that any First Amendment activity falls outside the 'legitimate business or social purpose[s]' that

permit entry", the High Court rejected the challenge. *Id.* at 122. One can only surmise what the High Court would have done if ejectment had been allowed for any reason or no reason at all.

Neither does defendant's citation to *Kolender v. Lawson*, 461 U.S. 352 (1983) buttress its point. In *Kolender,* the plaintiff successfully challenged on vagueness grounds a California loitering law that gave the police the power to arrest any person who did not provide "credible and reliable" identification upon demand. The majority noted that "[a]s generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement". *Id.* at 357. The majority went on to find that "the full discretion accorded to the police to determine whether the suspect has provided a 'credible and reliable' identification necessarily 'entrust[s] lawmaking "to the moment-to-moment judgment of the policeman on his beat"'" and that the section "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure'". *Id.* at 360. This is exactly plaintiff's argument in this case, with the added note that here *any* landowner (and not just police officers) are free to engage in such standardless enforcement.

The *Kolender* dissent argued that the statute "should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications". *Id.* at 358, fn. 8. However, the majority found otherwise, noting that facial challenges are not only permitted "if a law reaches a substantial amount of constitutionally protected conduct" but that "where a statute imposes criminal penalties, the standard of certainty is higher". *Id.* The majority noted that the "[n]o authority cited by the dissent supports its argument about facial challenges in the arbitrary enforcement context." *Id.* Thus, contrary to defendant's assertion that facial vagueness challenges only apply to cases with substantial amounts of constitutionally protected conduct, the *Kolender* framework perfectly applies to this case and strongly counsels a finding of constitutional infirmity given the unbridled discretion which police and landowners alike have to eject persons for no reason or any reason at all.

The City's citation to *Adderley v. Florida*, 385 U.S. 39 (1966) is inapposite, because that statute criminalized trespass with "malicious and mischievous intent". Here, the Ordinance criminalizes remaining on property if the police or landowner whimsically decides to arbitrarily eject someone without cause. Similarly, the citation to *Bouie v. Columbia*, 378 U.S. 347 (1964) is unhelpful because that case involved the State's attempt to broaden the scope of a statute *ex post facto* so as to secure the conviction of those who were lawfully present at a lunch-counter sit-in. The Court did not analyze the statute from an equal protection or arbitrary enforcement context and the case does provide any light for the propositions at issue here.

The case of *Daniel v. City of Tampa*, 843 F. Supp. 1445, 1446 (1993) is similarly unhelpful because it only criminalized remaining on property "without being authorized, licensed, or invited". Under Berkeley's Ordinance, a person who is authorized by constitutional or statutory law to be in a place (such as a city sidewalk, public park, a shopping mall, or free speech plaza on a University campus) is nevertheless subject to arrest if the landowner issues an arbitrary ejectment order. Under the *Daniel* statute, a person who was handing out leaflets in a government owned plaza could avoid prosecution by arguing that constitutional law "authorized" her presence in the plaza. The same is not true of Berkeley's Ordinance because there are no exceptions even if a person is lawfully present. Plaintiff's arrest clearly demonstrates this.

### B. The Public's Interest Strongly Favors Granting A Preliminary Injunction

The City admits that the Ordinance could be used by a property owner to exclude persons in violation of their rights. *Opposition*, p. 10, fn. 4. The City's suggested remedy for this is for the individual cited to "avail his or herself of remedies against the property owner for such improper exclusion." *Id*. However, no such remedies exist. The statute itself provides the arrested person no remedy, and under the doctrine of *Richardson v. City of South Euclid* (1990) 904 F.2d 1050, a plaintiff has no §1983 cause of action against a police officer merely because he or she was arrested and prosecuted for violating a law that was later found to be unconstitutional. Similarly, California police officers have immunity under Government Code §820.6 for enforcing a law even if the law is

later found to be unconstitutional, and a private citizen could hardly be liable for arresting someone whose conduct fit the elements of a crime even if the law was later deemed unconstitutional.

In any case, Berkeley cannot justify the Ordinance's effect of allowing a landowner to randomly violate the constitutional and statutory rights of others on the grounds that the disenfranchised person might be able to get a lawyer and sue.

The City also suggests that the Ordinance "cannot reasonably be interpreted to disregard constitutional and statutory law that necessarily informs its scope". *Opposition*, p. 10, fn. 4. This would appear to be a plea for the court to think of every right the City forgot to protect and then rewrite the statute to include the entire "structure of state and federal protections of individual rights". *Id.* While this is an excellent task for the Berkeley City Council to put on its agenda, it is not the function of a federal court to rewrite a statute as infirm as the one at bar. The court in *Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971) was faced with a similar request, and it declined to do so, noting:

> It is impossible to save the ordinance in this case by reading into it, by construction, the many exceptions which would be necessary to avoid conflict with the Civil Code and the Constitution. In its present form it is so overbroad that it stands as a serious threat to the exercise of civil and constitutional rights.

The court should thus find that the public interest strongly counsels in favor of striking enforcement of this statute.

**C. California Court Decisions Compel a Finding of Unconstitutionality**

The trio of *In re Cox*, 3 Cal.3d 205 (1970), *Ames v. City of Hermosa Beach*, 16 Cal.App.3d 146 (1971), and *In re Timothy R.*, 202 Cal.App.3d 593 (1988) compel a finding that the Ordinance is unconstitutional.

It is true that that the C*ox* and *Timothy R.* ordinances had built in exceptions which generally rendered those enactments constitutional and that both cases ultimately hinged on specific points not fully at issue here. Nevertheless, the City is incorrect so suggest that the exceptions in *Cox* were of no relevance to the decision. The *Cox* court pointed out that the exceptions found in the San Rafael ordinance "tie[] into the Unruh Act by providing that it shall not be effective in an instance in which

1  'its application results in or is coupled with an act prohibited by the Unruh Civil Rights Act.'" *Cox*,
2  3 Cal.3d at 212-213. In fact, the case devoted an entire subheading to a topic entitled "*2. The San*
3  *Rafael trespass ordinance does not endow the shopping center with an absolute power arbitrarily*
4  *to exclude a would-be customer from its premises.*" *Id.* at 211. The *Cox* court was clear that the
5  exceptions were critical.

6  More importantly, the *Cox* and *Timothy R.* cases are highly relevant because they discuss
7  the underpinnings of the Unruh Act and equal protection and the reasons why arbitrary exclusion
8  laws are invalid. *Cox* serves as a backdrop to the *Ames* case, while *Timothy R.* serves as a
9  reaffirmation of both *Cox* and *Ames*.

10  The City attempts to distinguish *Ames* (which bears a striking resemblance to the case at
11  bar) by suggesting that *Ames* was simply a "loitering law" case. While it is true that part of the
12  Hermosa Beach statute in question did involve loitering, the court also noted that "Section 20-10
13  purports to give the owner of private property the arbitrary power to exclude anyone at his whim,
14  under penalty of criminal prosecution." *Ames*, 16 Cal.App.3d at 152. Contrary to the City's
15  assertion, the *Ames* court did not strike down the statute because of its vagueness in defining
16  "loitering"; instead, the court noted that unlike San Rafael's ordinance in *Cox*, Hermosa Beach put
17  in no exceptions and that it was therefore impossible to apply a judicially saving construction to the
18  statute. *Id*.

19  The City also suggests that *Ames* was wrongly decided in light of *Hicks*, *Adderley*, and
20  *Bouie*. However, *Ames* was decided years after the *Adderley* and *Bouie* cases and *Ames* presumably
21  took those decisions into account to the extent they had any relevance. While *Hicks* does post-date
22  *Ames*, it in no way contradicts *Ames'* key teachings. As mentioned above, the *Hicks* statute
23  contained a broad exception forbidding ejectment for those having "a business or social purpose for
24  being on the premises" while Berkeley's Ordinance contains no exceptions of any kind whatsoever.
25  Given the clear precedent of *Ames*, this court is respectfully asked to declare the Berkeley's
26  Ordinance unconstitutional and forbid enforcement of it.

## CONCLUSION

Berkeley's Ordinance violates basic state and federal constitutional and statutory guarantees. The court is asked to enter a preliminary injunction barring its enforcement and declaring that the Ordinance is void and has no force or effect.

Dated: August 31, 2007

_____
MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFFS

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**REPLY IN SUPPORT OF PLAINTIFFS MOTN. FOR PRELIM INJUNCTION**

C07 03173 MMC   Page 8